TOTES, INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 91-09-00714

(Decided September 4, 1992)

*Kenneth N. Wolf* for the plaintiff.
*Stuart M. Gerson*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice (*Bruce N. Stratvert*); and Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service (*Arlene Klotzko*), of counsel, for the defendant.

OPINION

AQUILINO, *Judge:* This case contests denial of a protest of exclusion from the United States of goods made in the Republic of Korea and marketed *sub nom.* "totes HOOD WRAP", Style No. 1356.

Importation of a textile product of that kind from that country required a visa, which the plaintiff obtained in Textile Quota Category 659-O. It thereafter attempted to enter the merchandise through the port of Seattle under subheading 6117.10.20 of the Harmonized Tariff Schedules of the United States ("HTS"), which encompasses "Other made up clothing accessories, knitted or crocheted; * * * Shawls, scarves, mufflers, mantillas, veils and the like: * * * Of man-made fibers". The Customs Service denied entry on the ground that the goods required a category 659-H visa and are classifiable under HTS subheading 6505.90.60, to wit:

Hats and other headgear, knitted * * *:

* * * Other:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Of man-made fibers:

Knitted * * * or made up from knitted * * * fabric: * * *

Not in part of braid[.]

Jurisdiction for this case is pursuant to 28 U.S.C. § 1581(a), and the plaintiff has requested precedence under 28 U.S.C. § 1657 and CIT Rule 3(f).

Trial showed the merchandise to be a flat piece of knitted acrylic yarn, which, when folded in half lengthwise, measures some 35 inches in length by 14 inches in width, with stitching across three fourths of the width of the material at its longitudinal midpoint. The stitching creates a curved pocket so as to better conform that section of the item to the configuration of the human head when on or wrapped around it. As demonstrated, the piece can be placed around the neck and/or the shoulders, as well as pulled up and over the head. Whatever the placement, the extensions of the item are long enough to be worn hanging loose, knotted, tossed over one or both shoulders, or crossed.[1]

The crux of this case then is whether the piece is fundamentally headwear, albeit capable of also being worn about the neck and shoulders, or a shawl, scarf, muffler, mantilla or the like, capable of also being pulled or wrapped up and over the head.

In pressing its position on this issue, the defendant points to the chosen marketing nomenclature for the subject merchandise, namely, "hoodwrap" and "hoodlike". At trial, plaintiff's director of marketing explained that the shaping of the item is used as a "hook" for consumers. Tr. at 11. That is, emphasis is placed on the hood aspect of the item rather than on its more obvious scarflike characteristics, with the term "hoodlike" intended to provide a commercial if not fashion frame of reference for this form of accessory.

The defendant also relies on the inclusion of the piece in Totes "Headwear" literature as indicative of the nature of the merchandise. *See* Defendant's Exhibits Z, AA, BB, CC. However, the latter two, Fall 1991 and 1992 brochures, in addition to their color pictures, descriptive text and purchase information for the hoodwrap, rainhat, rainhood and other items, depict a knit turtleneck shirtfront called a "dickie". That item clearly is not for the head and tends to dispel the notion that advertisement of the hoodwrap in those brochures is determinative of its character. "While the manner in which merchandise is advertised and marketed is a factor to be considered in determining its classification, it is not controlling." *Dominion Ventures, Inc. v. United States*, 10 CIT 411, 413 (1986), citing *Nadel & Sons Toy Corp. v. United States*, 4 CIT 20 (1982), and *Guardian Industries Corp. v. United States*, 3 CIT 9 (1982).

Apparently, the hoodwraps are sold in sections of department stores also offering hats. Nonetheless, the emphasis placed by both parties on the meaning of "millinery" has little bearing on the issue at hand. A knit hat for general, cooler- or inclement-weather wear is not an item which

---

[1] The parties tangled at trial over the shape of the item, with the plaintiff calling it rectangular, at least when folded in half, and the defendant characterizing it as V-shaped when unfolded. Whatever the perceptions, defendant's witness agreed that a scarf or shawl need not be rectangular [*e.g.*, Tr. at 189], and, as a matter of law, it is the function of the merchandise which is controlling. *See, e.g.*, R. Sturm, Customs Law & Administration § 50.4, at 27 (3d ed. 1991).

would normally be sold in a millinery department, which is usually reserved for ladies' decorative hats. Rather, such a piece is most often found in an accessories department alongside other items for such wear like scarves and gloves. Plaintiff's marketing director testified, for example, that Totes items are often displayed in a "Totes Shop" with other company products, be they scarves, hats, rainhoods, or hoodwraps. Tr. at 14.

The evidence of record does not refute the fact that scarves can be, and often are, worn on the head. That scarves and other items covered by HTS chapter 61 can be so worn does not make them headgear for purposes of classification under chapter 65.[2] In fact, the additional U.S. note to chapter 65 specifically precludes classification under that chapter of goods covered by HTS subheading 6117.10. Furthermore, the language of that provision does not require this court to find that the merchandise is precisely one of the items specifically provided for but merely that it is sufficiently similar to be included in the statutory grouping of shawls, scarves, mufflers, mantillas, veils and the like.

However, there remains the question of whether the hoodwrap is also sufficiently like a hood, as the defendant contends, so as to be among such other headgear.[3] An item may lie under several different tariff provisions, and a finding that it lies under one does not preclude a finding that it is also covered by another. General Rule of Interpretation 3 provides that where goods are

> classifiable under two or more headings, classification shall be effected as follows:
>
> > (a) The heading which provides the most specific description shall be preferred to headings providing a more general description. * * *
> >
> > \*    \*    \*    \*    \*    \*    \*
> >
> > (c) When goods cannot be classified by reference to 3(a) * * *, they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

In other words, if the Totes hoodwrap is equally within the ambit of headgear as within that of scarves and the like, the headgear provision prevails.

The piece at bar, the defendant argues, is essentially a hood.[4] During trial, various attempts were made to define such an item, with numerous lexicographic descriptions being offered. *See, e.g.,* Tr. at 102–03, 168, 247–48; Defendant's Post-Trial Brief at 24, 25, 31–32; Brief for

---

[2] Mantillas, for example, are generally worn on the head and yet are specifically provided for by chapter 61.

[3] Hoods are not specifically provided for in chapter 65, but that they should be considered headgear within the meaning of the HTS is made clear in the Customs Cooperation Council Explanatory Notes to heading 6505. While those notes are not controlling, they do provide insight as to the scope of the various headings. *See, e.g.,* Guidance for Interpretation of Harmonized System, T.D. 89–80, 23 Cust. Bull. 379 (1989).

[4] In the alternative, the government contends that the item is a hat.
The evidence clearly does not support this secondary position. According to testimony and common-use definitions, a hat is a structured piece of headwear, usually consisting of both a crown and a brim, although some hats may have one or the other. The hoodwrap at issue has neither.

Totes, Inc. at 18–19. They indicate that a hood is generally a soft or flexible, shaped piece of material to be pulled up and over the head, sometimes fastened below the chin and often, but not necessarily, attached to a jacket, coat or cape. In this regard, the hoodwrap has resemblance to a hood.[5] However, hoods have no other primary purpose than as headwear. When they are not on the head, they have little function. The hoodwrap, on the other hand, can be used in every way a scarf of similar size and weight can be used.[6] Indeed, a scarf without the shaping created by the hoodwrap's center seam can also be pulled forward and worn in a hoodlike manner, and yet this common and practicable use does not transform its essential nature.

The hoodwrap at issue is essentially a scarf with some shaping of its middle so as to "hook" consumers if not to make it more easily wearable on the head. This shaping, however, does not transmute the piece into a hood for purposes of classification under the HTS. The court concludes that the merchandise is still within the purview of chapter 61.

In sum, the court is persuaded by the able presentments of the facts and the law by the parties that the plaintiff has overcome the statutory presumption set forth at 28 U.S.C. § 2639 (a)(1) that the classification by Customs was correct. Contrary to the government's stated position, it is not "manifest that the Totes hoodwrap is essentially and solely headgear." Defendant's Post-Trial Brief at 31.

Judgment must therefore enter in plaintiff's favor.

---

[5] By way of comparison, the Totes rainhood, plaintiff's exhibit 4, is definitely a hood, whether on the head or off.

[6] Compare plaintiff's exhibit 1 with defendant's exhibit B, which, while also called a hoodwrap, does not assume a scarflike quality when around the neck and shoulders. Exhibit B is clearly comprised of two distinct elements, a knit scarf and a shaped hood or hat, while the Totes hoodwrap is genuinely a single unit with a partial shaping stitch.